**United States District Court**
**Eastern District of Texas**
**Sherman Division**

| | |
|---|---|
| ANDRA GROUP, LP,<br><br>                    *Plaintiff*<br><br>v.<br><br>VICTORIA'S SECRET STORES, LLC,<br>VICTORIA'S SECRET STORES BRAND<br>MANAGEMENT, INC., VICTORIA'S<br>SECRET DIRECT BRAND<br>MANAGEMENT, LLC, AND L BRANDS,<br>INC.,<br><br>                    *Defendant* | Case No. 4:19-cv-00288-ALM-KPJ |

### Plaintiff Andra Group, LP's Response to Defendants' Renewed Motion to Dismiss For Improper Venue, or in the Alternative, Transfer

Plaintiff Andra Group, LP files this response in opposition to Defendants Victoria's Secret Stores, LLC, Victoria's Secret Stores Brand Management, Inc., Victoria's Secret Direct Brand Management, LLC, and L Brands, Inc.'s Renewed Motion to Dismiss for Improper Venue, or in the Alternative, Transfer [Dkt. # 24] (the "Motion").

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................... i

CASES ...................................................... Error! Bookmark not defined.

STATUTES ............................................................................... iii

INTRODUCTION ....................................................................... 1

BACKGROUND ......................................................................... 3

    1.    Andra Group is a Texas limited partnership, which operates
HerRoom.com, one of the largest online retailers in women's lingerie. ................. 3

    2.    Defendants are interrelated companies that strive to create a digital
platform that integrates the digital and physical brand experience for
Victoria's Secret—each of which infringes the '498 Patent in this
District. .............................................................................. 3

        2.1.    LBI. ......................................................................... 4

        2.2.    VS Stores. ................................................................. 6

        2.3.    VS Direct and VS Brand. .............................................. 7

LEGAL STANDARD .................................................................. 9

ARGUMENT ......................................................................... 10

    1.    Venue is proper as to LBI, VS Direct, and VS Brand because they
ratified regular and established places of business in this District. ...................... 10

        1.1.    LBI. ....................................................................... 12

        1.2.    VS Direct. ............................................................... 16

        1.3.    VS Brand. ............................................................... 18

    2.    Venue as to VS Stores is proper because it commits acts of
infringement in the District. .............................................................. 19

    3.    Defendants coordinate to create a unified presence at the physical
Victoria's Secret stores and online at the Victoria's Secret website. ................... 23

    4.    The Court should disregard the Declaration of Brad Kramer—the only
purported evidence submitted by Defendants. ....................................... 26

    5.    This case should not be transferred to the Southern District of Ohio. ................. 27

CONCLUSION ....................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*Adidas-Salomon AG v. Target Corp.*, CV-01-1582-ST, 2002 WL 35633578 (D. Ore. Jan. 17, 2002)....................................................................................................27

*AGIS Software Dev., LLC v. ZTE Corp.*, No. 2:17-CV-00517-JRG, 2018 WL 4854023 (E.D. Tex. Sept. 28, 2018) ........................................................... 11, 24

*Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2010)....................................................................................................10

*Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 WL 4849345 (E.D. Tex. Sept. 6, 2018), *vacated sub nom. Blitzsafe Texas LLC v. Mitsubishi Elec. Corp.*, No. 2:17-CV-00418-JRG, 2019 WL 3494359 (E.D. Tex. Aug. 1, 2019) ...........................................................passim

*CXT Sys., Inc. v. Container Store, Inc.*, No. 2:18-CV-00173-RWS-RSP, 2019 WL 1506015 (E.D. Tex. Apr. 5, 2019) .......................................................................28

*Ethypharm SA France v. Abbott Labs.*, 271 F.R.D. 82 (D. Del. 2010) ...........................................14

*In re Cray*, 871 F.3d 1355 (Fed. Cir. 2017) .............................................................. 10, 12

*In re LimitNone, LLC*, 551 F.3d 572 (7th Cir. 2008) ....................................................................28

*In re ZTE (USA) Inc.*, 890 F.3d 1008 (Fed. Cir. 2018) .......................................................... 10, 24

*Infotronics Corp. v. Varian Assoc. Corp.*, 45 F.R.D. 91 (S.D. Tex. 1968) ........................................28

*Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 WL 5630023 (E.D. Tex. Nov. 22, 2017)................................................................ 10, 11, 23, 24

*Javelin Pharms., Inc. v. Mylan Labs. Ltd.*, C.A. No. 16-224-LPS, 2017 WL 5953296 (D. Del. Dec. 1, 2017) ................................................................... 11, 24

*SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933 (E.D. Tex. 2018)................... 9, 10, 24

*Source Network Sales & Marketing, LLC v. Ningbo Desa Electrical Manufacturing Co., Ltd.*, No. 3:14-cv-1108-G, 2015 WL 2341063 (N.D. Tex. May 15, 2015) .........................26

*Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293, 2017 WL 5126158-RWS-RSP (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted*, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017) ................................................................24

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150 (D. Or. 2015) ........................14

*Stewart v. Wachowski*, 574 F. Supp. 2d 1074 (C.D. Cal. 2005)........................................27

*TC Heartland v. Kraft Foods Grp. Brands, LLC*, 137 S. Ct. 1514 (2017) ........................................10

*Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 WL 4560742 (E.D. Tex. Mar. 9, 2018), *report and recommendation adopted*, No. 6:17-CV-00170-RWS, 2018 WL 4524119 (E.D. Tex. May 1, 2018) ........................... 11, 24

*Title Ins. & Tr. Co. v. Cty. of Riverside*, 48 Cal. 3d 84 (1989) ........................................14

*Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.*, 252 F. Supp. 2d 917 (D. Ari. 2003) ................................................................27

*U.S. v. One 1988 Prevost Liberty Motor Home*, 952 F. Supp. 1180 (S.D. Tex. 1996)......................14

*Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314 (E.D. Tex. July 15, 2019) ................................................................21

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 5315206 (E.D. Tex. Oct. 26, 2018) ................................................................15

*Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832 (S.D. Tex. 2011) ........................27

## Statutes

28 U.S.C. § 1400(b) .................................................................... 1, 10, 11, 22

28 U.S.C. § 1406(a)................................................................................30

# INTRODUCTION

Defendants are collectively responsible for Victoria's Secret—a multinational lingerie retailer whose retail stores permeate the United States, including in this District. Defendants move to dismiss this case because it claims venue is improper.  Despite the fundamental nature of their business, and significant evidence to the contrary, Defendants—the various interrelated corporate entities that operate the Victoria's Secret business—attempt to manufacture separateness among the entities to claim (1) that certain of their companies do not have a regular and established place of business in this District and (2) that the entity operating the physical stores in this District does not infringe here. Defendants' unsupported contentions denouncing venue in this District are incongruous with their numerous publicly filings, their own previous representations made as parties in other federal litigation, Andra Group's infringement allegations, and even testimony provided by a store manager of one of the Victoria's Secret stores in this District.

Venue is proper under 28 U.S.C. § 1400(b).  Defendants' motion rests on an incorrect premise—that the only way to capture venue against separate-but-related entities is through "alter ego" imputation.  Federal Circuit precedent holds that a defendant can ratify an *independent* third-party's place of business—much less a subsidiary's—for venue purposes.  And as Andra Group pleaded, each of Defendants has ratified the Victoria's Secret physical stores in this District as its own. Formal corporate distinctions do not defeat patent venue, and the factors that the Federal Circuit instructs the Court to consider—including Defendants' marketing, public statements, and their relationship to employees in Victoria's Secret brick-and-mortar stores—indicate those stores meet statutory venue requirements for each of Defendants.

A recent decision from this Court is particularly on point. In *Blitzsafe Texas, LLC, LLC v. Bayerische Motoren Werke AG*, the Court found that BMWNA "has **undoubtedly** adopted and ratified the [independent] dealerships within this District as its place of business."[1] The Court considered the following in finding ratification on the part of BMWNA:

---

[1]   *Blitzsafe Texas, LLC v. Bayerische Motoren Werke AG*, No. 2:17-CV-00418-JRG, 2018 WL 4849345, at *8 (E.D. Tex. Sept. 6, 2018), *vacated sub nom. Blitzsafe Texas LLC v. Mitsubishi Elec.*

"BMWNA does not permit sales of any BMW vehicle from any location *except* authorized dealers, such as the BMW Centers found within this District. The authorization by BMWNA of the BMW dealerships as its exclusive new-vehicle sales locations is, in this Court's opinion, sufficient ratification to meet the statutory requirement."[2]

- Similarly, Defendants do not permit sales of any Victoria's Secret merchandise from any location except Victoria's Secret retail stores and the Victoria's Secret website and apps.[3]

"[T]he dealerships are *named* 'BMW' (for example, BMW of Tyler, BMW of Beaumont, Classic BMW (located in Plano) and referred to by BMWNA as 'BMW Centers.'"[4]

- Here, the Victoria's Secret stores in this District carry only Victoria's Secret merchandise and have signs on the front that identify them as "Victoria's Secret" to the public.[5]

"[T]he dealerships prominently display the singular logo of BMW with no reservations such as 'authorized dealer' or 'exclusive dealer.' The dealerships are held out to the consuming public as places of BMW where BMW, through franchised dealers, sells BMW cars to said consuming public."[6]

- The Victoria's Secret stores in this District also display the singular sign of "Victoria's Secret" and never distinguish that separate companies allegedly control different components of the store and/or website.[7]

---

*Corp.*, No. 2:17-CV-00418-JRG, 2019 WL 3494359 (E.D. Tex. Aug. 1, 2019) (emphasis added).

[2] *Blitzsafe Texas*, 2018 WL 4849345, at *8.

[3] Ex. 8 to Whitehead Decl., VS Brand's Complaint filed on Dec. 11, 2014, in Case No. 14-2586 (S.D. Ohio), at ¶ 16 (Victoria's Secret "closely controls the distribution and sale of its products. [Victoria's Secret] products are not available through any third party website, catalog or retail location.").

[4] *Blitzsafe Texas*, 2018 WL 4849345, at *8.

[5] *See* Ex. 4 to Whitehead Decl., Transcript of the Deposition of Lisa Barcelona ("Barcelona Transcript"), dated Oct. 10, 2019, at 70:5-22 ("Q. Does the Victoria's Secret store in Frisco only carry the Victoria's Secret lines? A. Yes. Q. And then the PINK location only carries the PINK lines in Frisco? A. Yes. . . . Q. Could you start selling men's clothes if you wanted to? A. No. Q. Could you carry other brands other than Victoria's Secret? A. No. Q. You can only carry Victoria's Secret products; correct? A. Yes.") and 60:14-20 ("Q. At all of – at all of the Victoria's Secret locations you've worked for, have all of the signs – or have all the stores had signs on the front? A. Yes. Q. Have they all said 'Victoria's Secret'? A. Yes.").

[6] *Blitzsafe Texas*, 2018 WL 4849345, at *8.

[7] *See* Ex. 4 to Whitehead Decl., Transcript of the Deposition of Lisa Barcelona ("Barcelona Transcript"), dated Oct. 10, 2019, at 70:5-22 and 61:7-62:4 ("Q. If you wanted to change your sign, could you do that? A. No. Q. If you wanted to change the font, could you do that? A. No. Q. If you wanted to change the design, could you do that? A. No. Q. If you wanted to change the wording, could you do that? A. No. Q. Is there any sign in your store that says 'Victoria's Secret Stores, LLC,' on it? A. Like, are you talking about a big sign like that, or like – Q. Something

"BMWNA, whose website is www.bmwusa.com, represents the dealerships within this District are places *of* BMWNA with respect to the purchase of new BMWs."[8]

- Here, the Victoria's Secret website at www.victoriassecret.com also has a "Find a Store" function that provides the physical addresses for Victoria's Secret retail stores, including those in this District, which represents that those stores are places of Victoria's Secret where the public can buy Victoria's Secret merchandise.[9]

For these reasons and as further discussed herein, Andra Group's First Amended Complaint alleges that Defendants have committed acts of infringement in this District and that Defendants have a regular and established business in this District. Defendants have not shown otherwise. Venue is proper. Accordingly, Andra Group respectfully requests that the Court deny Defendants' Motion.

## BACKGROUND

1. **Andra Group is a Texas limited partnership, which operates HerRoom.com, one of the largest online retailers in women's lingerie.**

CEO Tomima Edmark founded Andra Group in 1998 and began operating HerRoom.com to give women a way to purchase lingerie online. Ms. Edmark is the sole inventor of U.S. Patent No. 8,078,498 ("the '498 Patent"), which she assigned to Andra Group. Andra Group practices the '498 Patent, including in this District.

2. **Defendants are interrelated companies that strive to create a digital platform that integrates the digital and physical brand experience for Victoria's Secret—each of which infringes the '498 Patent in this District.**

Andra Group brought this action against four interrelated companies that are collectively responsible for Victoria's Secret, a multinational "lifestyle brand," for their infringement of the '498 Patent, which claims inventions directed to displaying articles on a web-page, including

---

that a customer can see. A. Oh, no. Q. Do you think your customers know that they're shopping in a store that's run by Victoria's Secret Stores, LLC? Mr. Miller: Objection; form. The Witness: No.").

[8]  *Blitzsafe Texas*, 2018 WL 4849345, at *8.

[9]  Ex. 10 to Whitehead Decl., *Find a Store*, https://victoriassecret.com/store-locator.

applying distinctive characteristics to thumbnails and displaying those thumbnails in a "master display field."[10] The four interrelated companies are (1) L Brands, Inc. ("LBI"); (2) Victoria's Secret Stores, LLC ("VS Stores"); (3) Victoria's Secret Direct Brand Management, LLC ("VS Direct"); and (4) Victoria's Secret Stores Brand Management, Inc. ("VS Brand") (collectively, "Defendants"). Andra Group's infringement claims are directed at Defendants' commercial website, www.victoriassecret.com (the "Victoria's Secret website") and related sites.[11]

### 2.1. LBI.

VS Stores, VS Direct, and VS Brand are interrelated companies that fall under the corporate umbrella of LBI.[12] LBI operates its business utilizing company-owned stores.[13] LBI supplies improvements and pays remodeling costs for Defendants' stores, including to interior walls, floors, ceilings, fixtures, and decorations, as well as paying certain operating costs such as maintenance, utilities, insurance, and taxes.[14] LBI invests in technology used in Defendants' stores.[15] The Victoria Secret's website directs all correspondence and inquiries be sent directly to LBI.[16]

With respect to the retail stores, the website, and the Victoria's Secret apps, LBI takes ownership of the retail stores and website in its recent Annual Report (Form 10-K) filed with the SEC:

---

[10]  *See* Amended Compl. [Dkt. # 21] ¶¶ 1-11, 15-44, and Ex. C [Dkt. # 21-3].

[11]  Defendants also make and offer for download "apps" such as the Victoria's Secret iOS and Android Apps, as well as the PINK Nation iOS and Android Apps that contain equivalent functionality as the standard browser website.

[12]  Motion at 2 ("Defendants in this case are all related companies that fall under the corporate umbrella of [LBI].).

[13]  Ex. 1 to the Declaration of Maeghan Whitehead ("Whitehead Dec."), L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 1 (LBI "operates" its "company-owned specialty retail stores."); *see also* Ex. 2 to Whitehead Decl., L Brands Board of Directors, *Modern Slavery Transparency Statement* (Aug. 10, 2018), https://www.lb.com/responsibility/supply-chain/modern-slavery-transparency-statement.

[14]  Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 15.

[15]  *Id*. at 21, 44.

[16]  Ex. 3 to Whitehead Decl., *Online Privacy Policy* (May 31, 2018), https://www.victoriassecret.com/privacy-and-security.

In addition to **our in-store experience**, we strive to create a customer-centric digital platform that integrates the digital and physical brand experience. Our digital presence, including social media, **our websites and our mobile applications**, allows us to get to know our customers better and communicate with them."[17]

LBI is integrally involved in the application process and posting of jobs for positions at physical retail store locations, including in this District.[18] For example, a job posting for a seasonable associate position at the Victoria's Secret location at Legacy West in Plano, Texas, which is in this District, was recently posted on LBI's website.[19] Additionally, LBI has a Code of Conduct, which it describes as "a resource where associates can find information that defines behaviors that are acceptable and those that are not."[20] LBI further states the Code of Conduct "is based on our values."[21] LBI requires all VS Stores' employees, including those at stores in this District, to acknowledge receipt of the Code of Conduct and abide by it.[22] LBI provides an "Ethics Hotline" to store associates and lists an ethics website—www.lb.ethicspoint.com—in the Code of Conduct distributed to all associates, including those in this District.[23]

---

[17] Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 3.

[18] *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 54:22-56:25 (discussing generally a job posting for a seasonal associate at the Victoria's Secret location at Legacy West in Plano, Texas, posted on LBI's website at careers.lb.com/job/10157312/seasonal-associate-legacy-west-plano-texas); Ex. 5 to Whitehead Decl., Seasonal Associate Legacy West Job Posting on LBI's Website.

[19] Ex. 5 to Whitehead Decl., Seasonal Associate Legacy West Job Posting on LBI's Website.

[20] Ex. 7 to Whitehead Decl., Letter from the Chairman regarding Code of Conduct.

[21] *Id.*

[22] *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 121:17-125:14, 128:22-129:10, 129:19-130:2, and 82:1-3 ("Q. Are you free to disregard the code of conduct? A. No."); Ex. 6 to Whitehead Decl., L Brands Code of Conduct for Associates, at 15.

[23] The Store Manager at the Victoria's Secret at Legacy West in this District testified that LBI's ethics hotline is used by in-store sales associates.  Ex. 4 to Whitehead Decl., Barcelona Transcript, at 125:2-14 ("A. So the ethics hotline is set up for associates who don't feel comfortable coming to management to being able to express a concern or something that is not going right in stores. And so this gives them an ability to, you know, speak with someone that can take down – can listen to their complaint, document it down, and then, you know, follow – you know, I guess investigate and follow up on it. Q. Have you ever had to call the ethics hotline? A. I have, yes.").

## 2.2.   VS Stores.

For purposes of this venue dispute, Defendants claim that VS Stores operates the brick-and-mortar Victoria's Secret stores across the country, including in this District.[24] VS Stores, VS Direct, and VS Brand are each managed by the same executive team.[25] Additionally, VS Stores and VS Brand share physical headquarters and a principal place of business located at Four Limited Parkway, Reynoldsburg, OH 43068.[26]

VS Stores' employees use the Victoria's Secret website to show products to customers in the retail stores, including in this District.[27] Sales associates at the retail stores, including in this District, direct customers to the Victoria's Secret website.[28] Further, receipts for items purchased in store direct customers to the Victoria's Secret website.[29]

Additionally, the Angel Card is a Victoria's Secret store credit card issued by Comenity Bank that can be used in Victoria's Secret retail stores and on victoriassecret.com, but it cannot be used as a general credit card.[30] Sales associates in the retail stores, including in this District, are

---

[24]  *See* Motion at 3.

[25]  *See* Ex. A to Motion, the Declaration of Brad Kramer ("Kramer Decl.") [Dkt. # 24-1], at ¶ 28.

[26]  *See id.* at ¶¶ 11, 23.

[27]  *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 36:7-15 ("Q. How often would you say your employees use tablets to show products on the Victoria's Secret website to customers? A. I would say once or twice a day. Q. But daily? A. Sometimes. Q. But at any given moment, two to three tables would be on the floor; is that correct? A. yes.") and 40:4-6 ("Q. And when your employees are using the iPads to show products, what website are they using? A. Victoriassecret.com.").

[28]  *Id.* at 135:13-136:9 ("Q. Have you ever seen or heard a sales associate tell a customer to go to the Victoria's Secret website? A. Yes. Q. Have you ever told a customer to go to the Victoria's Secret website? A. Yes. Q. Have you told a customer to go to the Victoria's Secret website while at the Legacy West location? A. Yes. Q. Did you tell a customer to go to the Victoria's Secret website while at the Stonebriar location? A. Yes. Q. Have you heard sales associates at the Victoria's Secret at Legacy West tell customers to go to the Victoria's Secret website? A. Yes. Q. Have you seen associates at the Legacy West show customers products using the iPad in store? A. Yes.").

[29]  Amended Compl. [Dkt. # 21] ¶ 10.

[30]  *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 114:1-12 and 116:5-7.

encouraged to discuss the Angel Card with customers and to sell the Angel Card.[31] Customers use the Angel Card at Victoria's Secret stores in this District, including the locations at Legacy West and Stonebriar all in Frisco, Texas, and apply for the Angel Card at Victoria's Secret stores in this District and online at the Victoria's Secret website.[32]

### 2.3.    VS Direct and VS Brand.

In their Motion, Defendants claim that VS Direct controls and operates the Victoria's Secret website (as well as the Victoria's Secret apps).[33] Defendants also claim that VS Brand "has no involvement with the functionality of the victoriassecret.com website" and "does not sell any product through the website, nor does it develop or maintain the victoriassecret.com website."[34] VS Brand, however, has represented in a complaint it filed as a plaintiff in a trademark infringement lawsuit against CafePress, Inc. in the U.S. District Court for the Southern District of Ohio that it "operates the highly successful website, www.victoriassecret.com."[35] VS Brand's complaint was verified under penalty of perjury by the Vice President, Intellectual Property of VS Brand.[36] VS Brand's complaint defines "Victoria's Secret Stores Brand Management, Inc." as "Victoria's Secret" or "Plaintiff."[37] VS Brand links itself to the accused website and retail stores as follows:

- ¶ 7 ("Plaintiff Victoria's Secret owns the famous 'VICTORIA'S SECRET' trademark[.] . . . Victoria's Secret also distributes the well-known VICTORIA'S SECRET Catalogue, operates the highly successful website, www.victoriassecret.com, and produces the acclaimed Victoria's Secret Fashion Show, a televised event featuring the 'Victoria's Secret Angel' supermodels, that has become an annual highlight of the fashion industry.");

---

[31]  *See id.* at 116:8-16.

[32]  *See id.* at 114:25-115:8.

[33]  Motion at 3-4.

[34]  *Id.* at 3.

[35]  Ex. 8 to Whitehead Decl., VS Brand's Complaint filed on Dec. 11, 2014, in Case No. 14-2586 (S.D. Ohio), at ¶ 11.

[36]  *Id.* at 15.

[37]  *Id.* at 1.

- ¶ 11 ("Plaintiff's products bearing the PINK Marks are sold through Plaintiff's website and catalogs, in VICTORIA'S SECRET retail stores, including dedicated 'PINK' store sections, and in dozens of standalone 'PINK' retail stores.");

- ¶ 13 ("Plaintiff's website has a dedicated 'PINK' section, which promotes 'PINK NATION,' an online community whose members have access to special offers and events. Customers may also join PINK NATION by downloading iPad and phone 'apps,' gaining access to additional branded experiences, activities, interactions and e-commerce opportunities.");

- ¶ 15 ("Plaintiff maintains a strong commitment to offering only the highest quality products, and closely controls the development, sourcing and production of all products bearing the VICTORIA'S SECRET Marks and PINK Marks.");

- ¶ 16 ("Plaintiff also closely controls the distribution and sale of its products. Plaintiff's products are not available through any third party website, catalog or retail location.");

- ¶ 19 ("Examples of Plaintiff's products bearing the VICTORIA'S SECRET Marks and PINK Marks as offered on Plaintiff's website are attached as **Exhibit A** hereto.").[38]

Thus, as a plaintiff in a trademark infringement suit, VS Brand swears under penalty of perjury that it is integrally involved in the operation of the Victoria's Secret website. But here, when trying to dispute venue, Defendants claim only VS Direct controls and operates the website. Additional publicly available information shows that VS Brand is the registrant of the Victoria's Secret website.[39]

Further demonstrating how intertwined VS Brand, VS Direct, and VS Stores are, they also filed a joint answer in a lawsuit in the U.S. District Court for the Southern District of Texas in which they collectively admit that they "operat[e] 1,133 retail stores, nationally and in the Southern District of Texas," "sell[] products through [their] website," and "sell[] women's apparel under the labels 'Victoria's Secret' and 'Pink.'"[40] Further, VS Brand's, VS Direct's, and VS Stores'

---

[38] *Id.* at ¶¶ 7, 11, 13, 15-16, and 19.

[39] Ex. 12 to Whitehead Decl., Registrant Search Results for victoriassecret.com (listing VS Brand as the registrant).

[40] Ex. 9 to Whitehead Decl., VS Stores', VS Brand's, and VS Direct's Answer filed on Nov. 15, 2017, in Case No. 3:17-cv-281 (S.D. Tex.), at ¶ 3.

joint answer "admits [] that it shipped purchased products to Plaintiff in the Southern District of Texas" and "admits that [they] operate[] a store in Lake Jackson, Texas."[41]

Defendants' interrelatedness and collective involvement with the Victoria's Secret website goes beyond VS Direct, VS Brand, and VS Stores. For example, the Victoria's Secret website directs all correspondence and inquiries be sent to LBI.[42] The Victoria's Secret website also has a "Find a Store" function that provides the physical addresses for Victoria's Secret retail stores, including those in this District, which Defendant claim are operated by VS Stores.[43] Further, the Victoria's Secret website allows customers to sign up for emails to get "the inside scoop from Victoria's Secret and Victoria's Secret PINK on exclusive online and in-store offers, new product alerts, store events and store openings in your area."[44] Additionally, customers can make purchases on the Victoria's Secret website and return those same items in a store location.[45]

Despite their best efforts in their Motion to argue otherwise, it is clear that Defendants do, in fact, work together "to create a customer-centric digital platform that integrates the digital and physical brand experience," just as LBI represents in its SEC filings.[46]

## LEGAL STANDARD

This Court is well-familiar with the legal standard associated with Motions to Dismiss for Improper Venue in the patent context.[47] Venue in patent infringement actions is defined by 28 U.S.C. § 1400(b), which states: "Any civil action for patent infringement may be brought in the

---

[41] *Id.* at ¶¶ 15-16.

[42] Ex. 3 to Whitehead Decl., *Online Privacy Policy* (May 31, 2018), https://www.victoriassecret.com/privacy-and-security.

[43] Ex. 10 to Whitehead Decl., *Find a Store*, https://victoriassecret.com/store-locator.

[44] Ex. 11 to Whitehead Decl., *Sign Up for Email*, https://victoriassecret.com/subscriptions/signup/email.

[45] *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 97:7-14.

[46] *See* Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 3.

[47] A recent decision by this Court included a thorough discussion of the legal requirements of 28 U.S.C. § 1400(b). *See SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 938-41 (E.D. Tex. 2018). For brevity, Andra Group will not repeat that discussion here in its entirety.

judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."[48] In short,[49] 28 U.S.C. § 1400(b) requires that there must be (1) a physical place in the district that (2) is a regular and established place of business which is (3) the place of the defendant.[50] The final requirement of 28 U.S.C. § 1400(b) is that the "acts of infringement" must have been committed by the defendant in the district.[51] Upon motion challenging venue in a patent case, the plaintiff bears the burden of establishing proper venue.[52] On a motion to dismiss for improper venue, the Court may examine facts outside of the complaint.[53] All well-pleaded allegations are taken as true, unless contradicted by movant's evidence.[54]

## ARGUMENT

Venue is proper under 28 U.S.C. § 1400(b) because Defendants have committed acts of infringement in this District and have a regular and established place of business in this District.

1. **Venue is proper as to LBI, VS Direct, and VS Brand because they ratified regular and established places of business in this District.**

---

[48] 28 U.S.C. § 1400(b).

[49] A domestic corporation "resides" only in its state of incorporation for venue purposes. *TC Heartland v. Kraft Foods Grp. Brands, LLC*, 137 S. Ct. 1514, 1517 (2017). When this action was filed, each of Defendants was incorporated in Delaware and thus "resides" in Delaware for venue purposes. Here, the relevant inquiry involves the second prong of 28 U.S.C. § 1400(b).

[50] *SEVEN Networks*, 315 F. Supp. 3d at 938 (citing *In re Cray*, 871 F.3d 1355, 1362-63 (Fed. Cir. 2017)).

[51] *See id.* at 942.

[52] *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018).

[53] *E.g., Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009), *cert. denied*, 558 U.S. 1111 (2010).

[54] *E.g.*, *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 WL 5630023, at *5 (E.D. Tex. Nov. 22, 2017) ("venue facts included in a complaint are accepted as true on a motion to dismiss unless defendants provide contrary evidence").

It is undisputed that the Victoria's Secret retail stores are "physical places" within the District and that they are "regular and established."[55] At the time Andra Group filed its First Amended Complaint, there were at least twelve Victoria's Secret retail stores in this District.[56]

In their Motion, Defendants argue that LBI, VS Direct, and VS Brand do not have regular and established places of business in this District.[57] Defendants, however, ignore that this Court recognizes that companies may ratify a physical place for venue purposes, despite not ostensibly "owning" that place of business.[58] The Federal Circuit has provided guidance as to whether a

---

[55] *See* Motion at 7 ("[VS] Stores operates all physical Victoria's Secret retail stores in the United States, including those in this District.").

[56] *See* Amended Compl. [Dkt. # 21] ¶ 15 (listing physical Victoria's Secret retail stores located at: 895 Market St., Allen, TX 75013; 811 Central Expressway, Plano, TX 75075; 2601 Preston Road, Frisco, TX 75034; 6121 W. Park Blvd., Plano, TX 75093; 2201 S. Interstate 35 E, Denton, TX 76205; 4081 Waller Creek Road, Highland Village, TX 75077; 4800 N. Texoma Parkway, Sherman, TX 75090; 4601 S. Broadway, Tyler, TX 75703; 3500 McCann Road, Longview, TX 75605; 2400 Richmond Road, Texarkana, TX 75503; 4600 S. Medford Dr., Lufkin, TX 75901; and 6155 Eastex Freeway, Beaumont, TX 77706).

[57] *See* Motion at 6-7.

[58] *See, e.g., Blitzsafe Texas, LLC*, 2018 WL 4849345, at *8 (finding that BMWNA had "undoubt-edly . . . ratified" its dealerships as places of BMWNA where, *inter alia*, "the dealerships [were] *named* 'BMW,'" and the dealerships displayed "the singular logo of BMW with no reservations such as 'authorized dealer' or 'exclusive distributor'") (emphases in original); *SEVEN Networks*, 315 F. Supp. 3d at 966 (Google ratified servers as "places of Google" within data centers by possessive statements on a website, such as "[o]ur Edge Network" and "our data centers"); *Tinnus Enterprises, LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 WL 4560742, at *5 (E.D. Tex. Mar. 9, 2018), *report and recommendation adopted*, No. 6:17-CV-00170-RWS, 2018 WL 4524119 (E.D. Tex. May 1, 2018) (retail space in third-party stores was "place of Defendants" where Defendants held space out as their own with signage, paid fees to construct the space, and controlled product placement for these spaces); *AGIS Software Dev., LLC v. ZTE Corp.*, No. 2:17-CV-00517-JRG, 2018 WL 4854023, at *3, n.2 (E.D. Tex. Sept. 28, 2018) (indicating "ratification would likely be proper" if Defendant used its tradename to modify a business function operated at a third-party site – e.g. "ZTA customer service"); *Intellectual Ventures II LLC*, 2017 WL 5630023, at *7 (finding the allegations and evidence suggest the ratification *Cray* requires where "the FedEx website advertises that FedEx Ground and FedEx Express provide services from 'Ship Centers' in this District, . . ., which are all branded from the outside with the same FedEx logo used by each of the Defendants in this case."); *see also Javelin Pharms., Inc. v. Mylan Labs. Ltd.*, C.A. No. 16-224-LPS, 2017 WL 5953296, at *4 (D. Del. Dec. 1, 2017) ("In the Court's view, it follows from *Cray* that the 'place' of a corporate affiliate or subsidiary of a named defendant may, in at least some circumstances, and similar to the place of a defendant's employee, be treated as a 'place of the defendant.'").

defendant has ratified a place of business. Non-exhaustive factors—which Defendants ignore in their Motion and none of which requires proving alter ego[59]—include "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place," "whether the defendant conditioned employment on an employee's continued residence in the district or the storing of materials at a place in the district so that they can be distributed or sold from that place," and whether "the defendant itself holds out a place for its business."[60] Further, "a defendant's representations that it has a place of business in the district are relevant to the inquiry."[61] These representations might include "whether the defendant lists the alleged place of business on a website, or in a telephone or other directory; or places its name on a sign associated with or on the building itself."[62]

Here, LBI, VS Direct, and VS Brand have adopted and ratified the Victoria's Secret retail stores within this District as their places of business.

### 1.1.   LBI.

LBI has ratified the Victoria's Secret retail stores in this District as its places of business. LBI is the ultimate parent company for each of the other defendants.[63] LBI has extensive input on both the Victoria's Secret store and web presence. For instance, LBI has decision-making power to open, remodel, and close retail stores.[64] LBI supplies improvements and pays remodeling costs

---

[59] *See supra* Argument, § 3.

[60] *Cray*, 871 F.3d at 1363.

[61] *Id.*

[62] *Id.* at 1363–64.

[63] Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at Ex. 21 (listing subsidiaries of LBI).

[64] *See id.* at 1 ("Our company-owned retail stores are located in shopping malls, lifestyle centers and street locations in the U.S., . . . we have been able to lease high-traffic locations in most retail centers in which we operate."); Ex. 13 to Whitehead Decl., LBI Fourth Quarter 2018 Earnings Commentary, Feb. 27, 2019, at 7 ("We will continue to actively manage our real estate portfolio . . . we have opened 820 stores, closed 673 stores and sold 130 stores over the last 10 years, and as a result we have high profitability across all mall types, with about a third of our stores in non-mall venues. Given the decline in performance at Victoria's Secret, . . . [w]e are closing more stores in North America . . . 30 in 2018 and an estimated 53 in 2019, versus an

for the Victoria's Secret stores, including to "interior walls, floors, ceilings, fixtures, and decorations[,]" as well as paying "certain operating costs such as . . . maintenance, utilities, insurance, and taxes."[65] LBI invests in technology used in those stores and allocates capital for remodeling and improving them.[66]

Defendants fail to controvert these facts.  Instead, trying to skirt the issue of control, Defendants admit that LBI "***provides guidance*** to all LBI subsidiary companies (across all brands) as needed, including with respect to store opening, closing, and remodeling."[67] However, Defendants fail to elucidate how "provid[ing] guidance" is any different than exercising "control," as alleged (and as LBI has put forth in SEC filings and other public documentation). In all likelihood, LBI's "guidance" is gospel for its subsidiaries. For example, LBI requires all VS Stores' employees, including those at stores in this District, to acknowledge receipt of the Code of Conduct and abide by it.[68] Regardless, Defendants failed to contradict Andra Group's well-plead allegations that LBI decides when and where Victoria's Secret stores open and close.  Thus, the Court should credit those allegations in finding that LBI has ratified the Victoria's Secret stores as its "regular and established place of business" in this District.[69]

---

average of 15 stores per year historically.").

[65]   Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 15.

[66]   *Id*. at 21, 44 ("The capital expenditures included $487 million for opening new stores and remodeling and improving existing stores. Remaining capital expenditures were primarily related to spending on technology and infrastructure to support growth."); Ex. 13 to Whitehead Decl., LBI Fourth Quarter 2018 Earnings Commentary, Feb. 27, 2019, at 8 ("Our investment in technology and logistics will increase substantially in 2019, for initiatives supporting our digital business and other retail capabilities.").Throughout its Annual Report, LBI uses the pronouns "our" and "we," and LBI expressly defines "we" as referring to itself—not its subsidiaries. *See* Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 1("L Brands, Inc. ('we' or 'the Company') operates in the highly competitive specialty retail business.").

[67]   Motion at 12 (emphasis added).

[68]   *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 121:17-125:14, 128:22-129:10, 129:19-130:2, and 82:1-3 ("Q. Are you free to disregard the code of conduct? A. No."); Ex. 6 to Whitehead Decl., L Brands Code of Conduct for Associates, at 15.

[69]   *E.g.*, *Intellectual Ventures II LLC*, 2017 WL 5630023, at *5.

Notably, Defendants employ passive voice in the Declaration of Brad Kramer (the "Kramer Declaration") to deemphasize LBI's role in deciding which stores continue to operate: "The expenses associated with the real estate group's work ***are allocated to the subsidiary*** that uses those services."[70] The implication is clear: ***LBI*** allocates these expenses. Such economic allocation is the epitome of control—if LBI controls the purse strings of its subsidiary, it controls the subsidiary. Thus, under factors discussed in *Cray*, LBI exercises "attributes of possession or control" over the Victoria's Secret stores in this District.[71]

Additionally, LBI handles functionality related to the Victoria's Secret web presence—including data security.[72] Also in line with factors addressed in *Cray*, LBI outwardly claims the stores and website at its own.  Although Defendants argue that LBI has no presence in Texas, does not own or manage any property or business in Texas, has no employees in Texas, and does not sell products in Texas,[73] LBI's public SEC filings reflect that Victoria's Secret customers—either instore on online—are *LBI's* customers and that Victoria's Secret digital storefronts belong to *LBI*:

> In addition ***to our in-store experience***, we strive to create a customer-centric digital platform ***that integrates the digital and physical brand experience***. Our digital presence, including social media, ***our websites*** and ***our mobile applications***, allows us to get to know ***our customers*** better and communicate with them anytime and anywhere.[74]

---

[70]  *See* Ex. A to Motion, Kramer Decl. [Dkt. # 24-1], at ¶ 35 (emphasis added).

[71]  A wholly-owned subsidiary is commonly deemed to be within the control of its parent for other issues of court procedure, like discovery. *See, e.g., St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 104 F. Supp. 3d 1150, 1159 (D. Or. 2015) ("there are numerous cases that hold that a parent corporation has 'control' over documents owned by a wholly-owned subsidiary—even without any explicit analysis of specific contractual terms."); *Ethypharm SA France v. Abbott Labs.*, 271 F.R.D. 82, 93-94 (D. Del. 2010); *see also Title Ins. & Tr. Co. v. Cty. of Riverside*, 48 Cal. 3d 84, 90, 255 Cal. Rptr. 670, 673, 767 P.2d 1148, 1151 (1989) ("the acquisition of a corporation through a stock transfer results in a change of ownership of real property owned not only by the parent company but by a subsidiary of the parent"); *U.S. v. One 1988 Prevost Liberty Motor Home*, 952 F. Supp. 1180, 1210 (S.D. Tex. 1996) (upholding forfeiture of asset owned by subsidiary of business controlled by money-laundering individual).

[72]  Motion at 12.

[73]  *Id.* at 2.

[74]  Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 3

---

Defendants argue that those statements are simply sloppy pronoun usage—that LBI "sometimes us[es] collective pronouns such as 'we'" when referring to itself and its subsidiaries.[75]   However, LBI's SEC filings are clear—LBI claims the retail stores and their respective merchandise as its own—*sometimes even without collective pronouns*:

> L Brands, Inc. ("the Company") operates in the highly competitive specialty retail business. ***The Company is a specialty retailer*** of women's intimate and other apparel, personal care, beauty and home fragrance products. ***The Company sells its merchandise through company-owned specialty retail stores*** in the U.S., Canada, U.K., Ireland and Greater China, and through ***its*** websites and other channels.[76]

 LBI's disclosure unambiguously ties the singular "Company" and the singular pronoun "it" to the physical retail stores. Now, for venue purposes, LBI strains to claim the physical retail stores (and website) as distinct places not operated by LBI.[77]   Defendants' claim that the Court should ignore their concessions in mandated public filings is disingenuous,[78] and the Court should give credence to LBI's public disclosures.[79] In particular, this Court should hold LBI accountable for its statements to the public—the retail stores are the stores "of LBI."

LBI's ratification of the brick-and-mortar retail locations exceeds LBI's public filings and Defendants' admissions. In line with another *Cray* factor, LBI's relationship with employees shows that LBI has ratified the Victoria's Secret stores, including in this District, as its own. Specifically, LBI posts job openings and solicits employees for the Victoria's Secret stores in this District.  Indeed, LBI's own website[80]—*not* the Victoria's Secret website—lists a plethora of jobs for

---

(emphasis added).

[75]   Motion at 11-12.

[76]   Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 59 (emphasis added).

[77]   *See SEVEN Networks*, 315 F. Supp 3d at 966 (possessive statements on a website ratified location as places of defendant).

[78]   *See* Motion at 11-12.

[79]   *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 5315206, at *3 (E.D. Tex. Oct. 26, 2018) (statements made in a 10-K filing characterized subsidiary's business activities).

[80]   *See* Ex. 5 to Whitehead Decl., Seasonal Associate Legacy West Job Posting on LBI's Website.

Victoria's Secret store locations, including those in this District.[81]  Those job postings list the in-District stores by name and location,[82] and applicants apply to those Victoria's Secret jobs through LBI's website—*not* the Victoria's Secret's website.[83]  Further, LBI states that ***it***—and not some other entity—employs the associates in ***its*** stores (e.g., Victoria's Secret stores), using first-person possessive pronouns.[84]  Further, third-party job-posting websites also list LBI as the entity that employs Victoria's Secret employees.[85]  And every associate working in the Victoria's Secret stores, including at the Legacy West location in this District, must acknowledge receipt of and abide by LBI's Code of Conduct.[86]  LBI's control over and relationship with employees working in the Victoria's Secret stores reinforces that LBI has ratified those Victoria's Secret stores, including those in this District, as its places of business for purposes of venue.

### 1.2.    VS Direct.

VS Direct has ratified the Victoria's Secret retail stores in this District as its place of business. VS Direct—through the Victoria's Secret website—directs customers to physical stores bearing identical Victoria's Secret branding—same font, same designs, same products—by listing addresses and providing links to directions, holding them out as places for VS Direct's business.[87] When a user of the Victoria's Secret website clicks the link to "Find a Store," the website uses the

---

[81]  *Id.*

[82]  *See id.*

[83]  Clicking the "Apply" button takes the applicant through an application process starting at an LBI website: https://lbrands.taleo.net.

[84]  Ex. 14 to Whitehead Decl., *FAQ,* https://careers.lb.com/faq/#toggle-id-1 ("How many associates ***does L Brands employ***? L Brands and our family of specialty retail brands ***employs more than 88,000 associates*** in ***our*** home offices, distribution centers, customer care centers and ***our field and stores*** organization across North America and in more than 40 other countries worldwide.") (emphasis added).

[85]  Ex. 15 to Whitehead Decl., *Victoria's Secret Jobs, Employment in Plano, TX on Indeed.com,* https://www.indeed.com/jobs?q=Victoria%27s+Secret&l=Plano,+TX.

[86]  *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 121:17-125:14, 128:22-129:10, 129:19-130:2, and 82:1-3 ("Q. Are you free to disregard the code of conduct? A. No."); Ex. 6 to Whitehead Decl., L Brands Code of Conduct for Associates, at 15.

[87]  *See* Ex. 10 to Whitehead Decl., *Find a Store,* https://victoriassecret.com/store-locator.

browser location to show nearby stores.[88] Alternatively, the user can enter a zip code or city loca-tion—again, resulting in the Victoria's Secret website displaying nearby physical retail stores.[89] By clicking on the store, the Victoria's Secret website displays address information, store hours, and a link for directions to the store.[90] The Victoria's Secret website does not differentiate between the Victoria's Secret entities that purportedly own the website versus the physical retail stores.[91] Ac-cordingly, VS Direct—through the Victoria's Secret website—identifies each store as its place of business to consumers where they may purchase Victoria's Secret products.[92]

Other *Cray* factors also show that VS Direct has ratified the Victoria's Secret retail stores in this District as its regular and established places of business. For instance, VS Direct allows returns of online purchases to occur in Victoria's Secret stores.[93] However, VS Direct does not allow returns to be made to any other non-Victoria's Secret stores—thus, the online customer's only other option is to return the item by mail.[94] Further, customers could previously pick-up items ordered on the website at Victoria's Secret stores.[95] Thus, VS Direct has kept merchandise at Vic-toria's Secret stores—including in this District—so that merchandise could "be distributed or sold from that place."[96]

---

[88] *See id.*

[89] *See id.*

[90] *See id.*

[91] *See generally* the Victoria's Secret website at victoriassecret.com.

[92] *See Blitzsafe Texas*, 2018 WL 4849345, at *7-8 (finding BMW entity ratified "independent" dealerships when those dealerships included same BMW branding, were searchable on a web-site, and were locations where transactions on website could be completed).

[93] *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 97:7-14.

[94] *See* Ex. 16 to Whitehead Decl., *Can I return my online purchase in a Victoria's Secret store?*, https://customercare.victoriassecret.com/app/answers/detail/a_id/2097.

[95] *See* Ex. 17 to Whitehead Decl., *Victoria's Secret Now Offering Free Store Pickup in Select Markets!*, https://thekrazycouponlady.com/2018/01/05/victorias-secret-now-offering-free-store-pickup-in-select-markets.

[96] *See Cray*, 871 F.3d at 1363.

### 1.3.   VS Brand.

VS Brand has ratified the Victoria's Secret retail stores in this District as its places of busi-ness. According to Defendants, VS Brand is responsible for creating merchandise sold in Victoria's Secret's brick-and-mortar stores and for the "brand strategy" within those stores.[97] That alone is sufficient to show that VS Brand has adopted and ratified the Victoria's Secret retail stores within this District as its places of business.[98]

Further, VS Brand is the corporate parent of VS Direct.[99] Although Defendants contend that VS Brand "has no involvement with the functionality of the victoriassecret.com website,"[100] the evidence shows otherwise. VS Brand—in a complaint verified under penalty of perjury—rep-resented that its "products bearing the PINK Marks are sold through [its] website and catalogs, in VICTORIA'S SECRET retail stores, including dedicated 'PINK' store sections, and in dozens of standalone 'PINK' retail stores"; it "maintains a strong commitment to offering only the highest quality products, and closely controls the development, sourcing and production of all products bearing the VICTORIA'S SECRET Marks and PINK Marks"; it "**closely controls the distribu-tion and sale of its products**"; and its "**products are not available through any third party website, catalog or retail location**."[101] Additionally, VS Brand is listed as both the registrant con-tact and administrative contacts of the Victoria's Secret website.[102] Both of the email contact

---

[97] Motion at 3.

[98] *See Blitzsafe Texas*, 2018 WL 4849345, at *7-8 (finding BMW entity ratified independent deal-erships when those dealerships included same BMW branding, were searchable on a website, and were locations where transactions on website could be completed). Here, the facts are even stronger in favor of ratification, as the Victoria's Secret stores are not "independent" like the BMW dealerships; rather, Defendants purport that the retail stores are operated by VS Stores, which shares the **same executive team** and same headquarters as VS Brand. *See* Ex. A to Mo-tion, Kramer Decl. [Dkt. # 24-1], at ¶¶ 11, 23, 28.

[99] Motion at 3.

[100] *Id.*

[101] Ex. 8 to Whitehead Decl., VS Brand's Complaint filed on Dec. 11, 2014, in Case No. 14-2586 (S.D. Ohio), at ¶¶ 11, 13, and 15-16 (emphasis added); *see also Blitzsafe Texas*, 2018 WL 4849345, at *8.

[102] Ex. 12 to Whitehead Decl., Registrant Search Results for victoriassecret.com (listing VS Brand

addresses are listed as "domainadmin@**lb.com**"—including LBI domain addresses.[103] As the registrant, VS Brand is responsible for complying with the terms, conditions, and policies imposed by the domain registrar and ICANN, the organization responsible for coordinating and implementing domain name disputes.[104] In other words, VS Brand has "sole responsibility for the registration and use of" www.victoriassecret.com. The Victoria's Secret website essentially rests in VS Brand's hands.

VS Brand's integral role in the registration and use of the Victoria's Secret website matters because it means that the same "Find a Store" functionality, contacts listed, and other features of the Victoria's Secret website addressed above in relation to VS Direct are also attributable to VS Brand. Further, it shows that show that VS Brand has also ratified the Victoria's Secret stores within this District as its places of business.[105]

Because LBI, VS Direct, and VS Brand have adopted and ratified the Victoria's Secret retail stores within this District as their places of business, the Court should find that venue is proper in this District as to LBI, VS Direct, and VS Brand under 28 U.S.C. § 1400(b).

**2.      Venue as to VS Stores is proper because it commits acts of infringement in the District.**

Although Defendants admit VS Stores operates the Victoria's Secret retail stores in this District,[106] Defendants contend venue is improper as to VS Stores because it is "not involved in the accused acts of infringement."[107] This is untrue.

---

as the registrant).

[103] *Id.*

[104] *See Registrant's Benefits and Responsibilities*, https://www.icann.org/resources/pages/benefits-2013-09-16-en.

[105] As the registrant, VS Brand is the true owner of www.victoriassecret.com, which means that VS Brand has committed infringement in this District as well.

[106] *See* Motion at 3.

[107] *Id.* at 7.

First, Andra Group's First Amended Complaint alleges with specificity that Defendants, including VS Stores, have infringed at least one claim of the '498 Patent in this District. The allegations include, among other things, the following:[108]

- ¶ 32 ("Defendants, directly and/or through intermediaries, own, use, operate, advertise, put into service, and otherwise provide a virtual showroom that infringes one or more claims of the '498 Patent, including at least Claims 1, 2, 5, 6, 7, 8, and 11, in this District and elsewhere in the United States.").

- ¶ 33 ("The website located at https://www.victoriassecret.com/ (the "Website") and the Victoria's Secret Apps (the "Apps")[109] utilize a method for displaying one or more articles within a virtual showroom associated with a network server.").

- ¶ 34 ("Through the Website and the Apps, Defendants provide, by a processor, several thumbnail images of articles, each image comprising an icon and representing a respective perspective view of the article, allowing the user to select one of the thumbnail images for display in a master display field wherein each respective perspective view represents a different perspective view of the same article, each respective perspective view being selected from the group consisting of front, rear and side, and isometric views.").

- ¶ 35 ("Through the Website and the Apps, Defendants provide a distinctive characteristic to the thumbnail images selected by the user.").

- ¶ 36 ("Through the Website and the Apps, Defendants display the thumbnail image selected by the user in the master display field.").

- ¶ 41 ("Alternatively, users of the Website and the Apps perform certain of the limitations in the patented methods. Defendants instruct and encourage users to infringe the '498 Patent by encouraging them to utilize the Website and the Apps in a manner that infringes one or more claims of the '498 Patent. Upon information and belief, Defendants advertise to and/or instruct users of the Website and the Apps to do so in an infringing manner. Defendants, for example, are responsible for providing marketing materials, such as catalogs, coupons, and email product alerts, that direct others to the Website and the Apps, knowing that others will use the Website and the Apps in a manner that infringes the '498 Patent. Defendants conditioned the use of the Website and the Apps upon their users' performance of certain of the limitations of the '498 Patent,

---

[108] *See* Amended Compl. [Dkt. # 21]. Additionally, Andra Group attached claim charts to its Amended Complaint that described Defendants' infringement in greater detail. *See id*. at Ex. C [Dkt. # 21-3].

[109] Defendants make and offer for download "Apps" such as the Victoria's Secret iOS and Android Apps, as well as the PINK Nation iOS and Android Apps, that contain equivalent functionality as the standard browser website. *See id*. at ¶ 32 n. 7.

and by instructing these users on how to use the Website and the Apps for this purpose, Defendants established the manner or timing of that performance.").

- ¶ 42 ("By making and **using** the above-described virtual showroom, Defendants have injured Andra Group and are thus jointly and severally liable for direct infringement of the '498 Patent in accordance with 35 U.S.C. § 271(a)." (emphasis added)).

These allegations are sufficient to support the "acts of infringement" prong of 28 U.S.C. § 1400(b).[110]

Defendants argue that only VS Direct "is responsible for operating the website Plaintiff accuses of infringement"[111] and that VS Stores "does not make sales through the accused website, does not perform any development with respect to the accused website, and does not supply any product for sale on the accused website."[112] Again, Defendants miss the mark.[113]

VS Stores infringes the '498 Patent in this District each time a Victoria's Secret sales associate **uses** an iPad in store to show a customer a product utilizing the claimed method.[114] The Store

---

[110] *See, e.g., Blitzsafe Texas*, 2018 WL 4849345, at *4 ("[A]n allegation of infringement is itself sufficient to establish venue and the plaintiff is not required to demonstrate actual infringement by the defendant.").

[111] Venue is proper with respect to VS Direct in this District. As discussed above, VS Direct ratified the regular and established Victoria's Secret retail stores in this District, and Defendants admit VS Direct operates the accused website.

[112] Motion at 7.

[113] For venue, the statutory infringement inquiry is decoupled from the place-of-business inquiry under 28 U.S.C. § 1400(b). "[N]o relation is required between the two." *Virginia Innovation Scis., Inc. v. Amazon.com, Inc.*, No. 4:18-CV-474, 2019 WL 3082314, at *6 (E.D. Tex. July 15, 2019). "Section 1400(b) requires only that 'the defendant has committed acts of infringement and has a regular and established place of business.'" *Id.* "Nothing in the language of [§] 1400(b) justifies the conclusion that a defendant's place of business in the district must have some connection with the accused device." *Id.* (citing *Raytheon Co. v. Cray, Inc.*, 258 F. Supp. 3d 781, 791 (E.D. Tex. 2017), *mandamus granted on other grounds, In re Cray*, 871 F.3d 1355).

[114] Patent infringement captures more infringers than just those who *sell, make,* or *design* the accused product. Andra Group has alleged that VS Stores *uses* the accused functionality. *See, e.g.*, Amended Compl. [Dkt. # 21] ¶ 9 ("Defendants and their agents *use the website* located at victoriasecret.com while in Defendants' stores, including their stores in this District.") (emphasis added). Andra Group specifically alleged that "Defendants' employees perform all of the limitations of at least one" asserted claim. *Id.* That is sufficient to plead use-based infringement. *See* 35 U.S.C. §271(a) (an infringer "makes, *uses*, offers to sell, or sells any patented invention") (emphasis added).

Manager of the Victoria's Secret store at Legacy West, which is in this District, testified that employees use iPads to show products to customers on the Victoria's Secret website.[115] She further testified that a sales associate can use the in-store iPads to show products to customers in store and show different images of the products.[116] Additionally, she testified that "all the functionality from the Victoria's Secret website is available for use on the iPads" and that there are "thumbnail images on the website used on the iPads in [the Legacy West] store."[117] This testimony—in conjunction with Andra Group's well-plead allegations—is sufficient to show that VS Stores commits infringement in this District,[118] and thus, venue is proper as to VS Stores.

Further, the Court should credit Andra Group's allegations that employees in Victoria's Secret stores use the accused website themselves and direct customers to use the website, including in an infringing manner. Defendants argue that "[i]t is not part of a store associate's job *responsibility* to direct customers to victoirassecret.com."[119]  Again, this is immaterial, as it does not change that sales associates direct customers to the accused website—even in the physical stores. In other words, official "responsibilities" do not capture the entire universe of what Victoria's Secret sales associates *actually do*.  Similarly, unsupported statements in the Kramer Declaration

---

[115] *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 40:4-6 ("Q. And when your employees are using the iPads to show products, what website are they using? A. Victoriassecret.com.") and 41:22-25 (Q. Have you ever accessed the Victoria's Secret website on an iPad when interacting with a customer in a store? A. Yes.").

[116] *Id.* at 43:17-23 ("Q. Okay. So if I came in and was interested in the PINK Collegiate line, could an associate show me those products on the iPad? A. Yes. Q. And could they click and show me different images of those products? A. They could, yes."), 136:14-137:1 ("Q. When using the iPad to look at products, is it possible for the store employee to click on different images of the product on the tablet? . . . The Witness: I mean, yes. It's possible, yes. . . . I mean, all the features of the Victoria's Secret website are obviously available on the iPad. But – and so, I mean, obviously if they wanted to click on it, they could."), and 137:14-21 ("Q. But if the customer wants to see the product shown on the website at different angles, would the sales associate show her those angles? Mr. Miller: Objection; form. The Witness: I mean, if she wanted to, yes. I mean, we're not going to tell a customer no.").

[117] *Id.* at 145:8-25.

[118] *See also* Amended Compl. [Dkt. # 21] ¶¶33-36 and Ex. C [Dkt. # 21-3].

[119] Motion at 13 (emphasis added).

does not foreclose that associates use and demonstrate the website to customers in an infringing manner as alleged.[120]

Critically, Defendants offer no evidence to rebut the allegations in Andra Group's Amended Complaint concerning the store employees' use of the accused websites and direction of customers to use the website.  The Court must accept those allegations as true.  Accordingly, because each of Defendants—including VS Stores—infringes the '498 Patent in this District, venue is proper, and Defendants' Motion should be dismissed.[121]

**3.    Defendants coordinate to create a unified presence at the physical Victoria's Secret stores and online at the Victoria's Secret website.**

Defendants argue that Andra Group "can only meet the venue test if it shows that Defendants are alter egos."[122] Defendants' argument should be rejected because it is contrary to Federal Circuit case law and should be rejected.[123]  Even if Defendants observe corporate formalities, the proper focus of this venue analysis is the connection between Defendants and the brick-and-mortar

---

[120] *See, e.g.*, *Intellectual Ventures II LLC*, 2017 WL 5630023, at *7 ("This claim, like the declaration itself, falls short of showing that the various FedEx entities do not operate or provide services from locations in this District.").

[121] Seemingly as an afterthought, Defendants state that LBI and VS Brand do not make sales through the accused website, do not perform any development with respect to the accused website, and do not supply any product for sale on the accused website. *See* Motion at 7, n 1. The only purported support offered by Defendants for this assertion is a single inapposite statement from Kramer's Declaration regarding VS Direct, which does not address Defendants' <u>use</u> of the claimed method whatsoever. *See* Ex. A to Motion, Kramer Decl. [Dkt. # 24-1], at ¶ 19. Based on nothing else, Defendants assert "this provides an additional, independent basis to dismiss the case against those two Defendants for improper venue." Motion at 7, n 1. Defendants' statement is entirely conclusory and insufficient to controvert Andra Group's well-plead allegations as to LBI and VS Brand. *See, e.g.*, *Intellectual Ventures II LLC*, 2017 WL 5630023, at *5 ("venue facts included in a complaint are accepted as true on a motion to dismiss unless defendants provide contrary **evidence**" (emphasis added).

[122] *See* Motion at 8.

[123] If such a contention were true, a party could avoid venue based on a facility ostensibly owned by a subsidiary, even if that party installed its own managers, hired the subsidiary's employees, set the subsidiary's policies, and otherwise controlled the facility—so long as the party observed corporate formalities. That is in stark contrast to the Federal Circuit's case law.

Victoria's Secret stores in this District, as outlined in *In re ZTE*, 890 F.3d 1008 (Fed. Cir. 2018), not an alter ego analysis.

Defendants rely on the *Soverain* decision[124] to argue that formal corporate distinctions between related companies defeat venue.[125] However, in *In re ZTE* (which Defendants failed to cite and which post-dates the *Soverain* decision), the Federal Circuit did not anchor the venue analysis to corporate formalities; rather, the Federal Circuit instructed that "to be complete, the district court must give reasoned consideration to all relevant factors or attributes of the relationship in determining whether those attributes warrant [a third-party partner's facility] being deemed a regular and established place of business of [a defendant]."[126] Nothing in the guidance provided by the Federal Circuit suggests that the venue inquiry is different for a corporate subsidiary than it is for a third-party. Further, nothing in Federal Circuit precedent *demands* that Defendants be alter egos to find they ratified a regular and established place of business in this District. Before and after *In re ZTE*, this Court has acknowledged that defendants may ratify a physical place for venue purposes—without such defendants being the "alter ego" of the company owning the physical location in this District.[127]

Numerous facts establish that each of Defendants has adopted the in-District stores and the Victoria's Secret website as their own.  Indeed, Defendants are intentional in inextricably linking the Victoria's Secret website, apps, and brick-and-mortar stores.[128] It is clear from public filings

---

[124] *See Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-293, 2017 WL 5126158-RWS-RSP, at *1 (E.D. Tex. Oct. 31, 2017), *report and recommendation adopted by*, 2017 WL 6452802 (E.D. Tex. Dec. 18, 2017).

[125] *See* Motion at 8, 10-11.

[126] *In re ZTE*, 890 F.3d at 1015.

[127] *See, e.g., Blitzsafe Texas*, 2018 WL 4849345, at *8; *SEVEN Networks*, 315 F. Supp. 3d at 966; *Tinnus Enterprises*, 2018 WL 4560742, at *5; *AGIS Software Dev.*, 2018 WL 4854023, at *3, n.2; *Intellectual Ventures II LLC*, 2017 WL 5630023, at *7; *see also Javelin Pharms.*, 2017 WL 5953296, at *4 ("[I]t is likely more common for corporate parents to 'establish' or 'ratify' the place of business of their subsidiaries or other related corporate entities (with whom, for instance, they might share space)").

[128] Ex. 1 to Whitehead Decl., L Brands, Inc., Annual Report (Form 10-K) (Mar. 22, 2019) at 3 ("[W]e strive to create a customer-centric digital platform that integrate the digital and physical

and even casual observations of the Victoria's Secret website and physical stores that Defendants collaborate to produce a unified consumer experience across platforms and locations. For example, the website and apps direct consumers to the retail stores, and the sales associates at the retail stores direct customers to the website and apps while in the stores.[129] Promotions, sales, offers, collections, styles, and products offered via the website and apps are coordinated with what is available in stores. The Victoria's Secret Angel Credit Card, a store-branded credit card that offers cardholders exclusive rewards for shopping, is accepted at Victoria's Secret stores and on the Victoria's Secret website.[130] Further, there is a "Find a Store" function on the website and apps;[131] consumers can subscribe to newsletters about the online and in-store offers from the website and apps;[132] any items purchased online may be returned in retail stores;[133] and receipts for in-store purchases direct consumers to visit the website and to sign up for e-mails with special offers.[134]

---

brand experience").

[129] *See* Ex. 4 to Whitehead Decl., Barcelona Transcript, at 36:7-15 ("Q. How often would you say your employees use tablets to show products on the Victoria's Secret website to customers? A. I would say once or twice a day. Q. But daily? A. Sometimes. Q. But at any given moment, two to three tables would be on the floor; is that correct? A. yes."), 40:4-6 ("Q. And when your employees are using the iPads to show products, what website are they using? A. Victoriassecret.com."), and 135:13-136:9 ("Q. Have you ever seen or heard a sales associate tell a customer to go to the Victoria's Secret website? A. Yes. Q. Have you ever told a customer to go to the Victoria's Secret website? A. Yes. Q. Have you told a customer to go to the Victoria's Secret website while at the Legacy West location? A. Yes. Q. Did you tell a customer to go to the Victoria's Secret website while at the Stonebriar location? A. Yes. Q. Have you heard sales associates at the Victoria's Secret at Legacy West tell customers to go to the Victoria's Secret website? A. Yes. Q. Have you seen associates at the Legacy West show customers products using the iPad in store? A. Yes.").

[130] *Id*. at 114:25-115:8 and 116:8-16.

[131] *See* Ex. 10 to Whitehead Decl., *Find a Store*, https://victoriassecret.com/store-locator.

[132] Ex. 11 to Whitehead Decl., *Sign Up for Email*, https://victoriassecret.com/subscriptions/signup/email.

[133] *See* Ex. 16 to Whitehead Decl., *Can I return my online purchase in a Victoria's Secret store?*, https://customercare.victoriassecret.com/app/answers/detail/a_id/2097.

[134] Amended Compl. [Dkt. # 21] ¶ 10.

And the Victoria's Secret website directs all correspondence and inquiries be sent directly to LBI.[135]

Importantly, Defendants share overlapping directors, officers, and headquarters. For example, VS Stores, VS Direct, and VS Brand are each managed by the **same executive team**.[136] Additionally, VS Brand and VS Stores share physical headquarters and a principal place of business located at Four Limited Parkway, Reynoldsburg, OH 43068.[137] As such, an alter ego analysis is inappropriate in the context of venue, and here, the intentional unified presence that Defendants have created—both with respect to the Victoria's Secret stores in this District and the Victoria's Secret website and apps—shows that venue is proper in this District.

### 4.   The Court should disregard the Declaration of Brad Kramer—the only purported evidence submitted by Defendants.

The Court should strike or disregard the Declaration of Brad Kramer [Dkt. # 24-1] (the "Kramer Declaration") filed by Defendants in support of their Motion because Kramer does not provide sufficient explanation for his purported "personal knowledge" of the facts set forth in his declaration.[138] Courts often strike or disregard declarations, in part or in their entirety, when the declarations fail to properly establish the predicate for the personal knowledge of the facts set forth therein.[139] The Court should treat the Kramer Declaration no differently.  While Kramer states

---

[135] Ex. 3 to Whitehead Decl., *Online Privacy Policy* (May 31, 2018), https://www.victoriassecret.com/privacy-and-security.

[136] *See* Ex. A to Motion, Kramer Decl. [Dkt. # 24-1], at ¶ 28.

[137] *See id.* at ¶¶ 11, 23.

[138] A declaration or affidavit is only valid to the extent it is based on personal knowledge—conversely, witnesses may not testify to matters to which they cannot establish personal knowledge. *See* FED. R. EVID. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Source Network Sales & Marketing, LLC v. Ningbo Desa Electrical Manufacturing Co., Ltd.*, No. 3:14-cv-1108-G, 2015 WL 2341063, at *9 (N.D. Tex. May 15, 2015).

[139] *See, e.g., Source Network Sales & Marketing*, 2015 WL 2341063, at *9 (holding that parts of a declaration were inadmissible because the declarant, the vice president of a corporation who was familiar with the corporation's structure and operations, could not explain the basis for his personal knowledge of the business interactions at issue between the corporations holding

that he is the Executive Vice President and CFO for VS Brand, he provides no substantive explanation for his base of knowledge concerning the corporate structure of LBI, the Victoria's Secret subsidiary companies, and/or their relationship as it relates to issues of venue presented in the Motion.[140] Further, Kramer provides no explanation of his job duties to provide context to his "personal knowledge" of the facts asserted in his declaration, or how those facts would naturally fall within the sphere of responsibility of his employment with Defendants.[141] Absent this critical explanation, the Court cannot assume that Kramer truly possesses the personal knowledge of the facts contained in his Declaration. As a result, the Court should disregard the contents of the Kramer Declaration.

**5.    This case should not be transferred to the Southern District of Ohio.**

Defendants suggest that if the Court declines to dismiss the Complaint, it should transfer the case to the Southern District of Ohio pursuant to 28 U.S.C. § 1406(a).  Defendants have a misunderstanding of how § 1406(a) operates.  Courts may only apply § 1406(a) with a predicate

---

company and a buyer of the corporation's goods); *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 845-46 (S.D. Tex. 2011) (granting motion to strike plaintiff's affidavit in a Title VII case when affiant failed to establish personal knowledge of the job duties and pay rate of the employee that allegedly replaced the affiant at his former place of employment, despite asserting that the replacement had a similar job description); *Travelers Cas. & Sur. Co. of Am. v. Telstar Const. Co., Inc.*, 252 F. Supp. 2d 917, 924 (D. Ari. 2003) ("Plaintiff provides no facts establishing [affiant] possessed the legal requisite of personal knowledge . . . instead, Plaintiff argues the Court should assume personal knowledge based on a conclusory statement by [affiant]. Such conclusory affidavits fail to establish foundation."); *Stewart v. Wachowski*, 574 F. Supp. 2d 1074, 1088 n. 67 (C.D. Cal. 2005) (rejecting declarations for lack of foundation when declarant failed to demonstrate personal knowledge of the identity of the owner of particular films that were the subject of copyright infringement and RICO claims).

[140] *See generally* Ex. A to Motion, Kramer Decl. [Dkt. # 24-1].

[141] *See Adidas-Salomon AG v. Target Corp.*, CV-01-1582-ST, 2002 WL 35633578, at *2 (D. Ore. Jan. 17, 2002) ("[Affiant] may well have the requisite personal knowledge to state certain facts . . . but that is not evident from her declaration. She does not describe her job duties or the duties of the Brand Marketing Department . . . She does not state that she or her employees engaged in any historical research and gives no other indication as to how she acquired the information set forth in her declaration."); *see also Stewart*, 574 F. Supp. 2d at 1088 n. 67.

holding that the case is in the wrong district.[142] Defendants' alternative request assumes the Court would first hold that venue is proper in the Eastern District of Texas—accordingly, the necessary authority is § 1404(a), which permits transfer of venue for convenience when the venue originally chosen by the plaintiff is proper.[143] Defendants have not briefed the question whether the facts of this case would permit transfer under § 1404(a).[144] Accordingly, the Court should reject Defendants' improper alternative request to transfer this case to the Southern District of Ohio if it finds that venue is proper in the Eastern District of Texas.

## CONCLUSION

Andra Group's First Amended Complaint alleges that Defendants have committed acts of infringement in this District and that Defendants have a regular and established business in this District. Defendants have not shown otherwise. Venue is proper.

Accordingly, Andra Group respectfully requests that the Court deny Defendants' motion to dismiss for improper venue, or in the alternative, transfer.

---

[142] *See In re LimitNone, LLC*, 551 F.3d 572, 575 (7th Cir. 2008) ("Transfer under § 1406(a) is appropriate only when venue is improperly laid."); *Infotronics Corp. v. Varian Assoc. Corp.*, 45 F.R.D. 91, 94 (S.D. Tex. 1968) ("[D]efendant has file a motion to transfer venue under 28 U.S.C. § 1406(a). That provision applies only when a case is filed 'laying venue in the wrong division or district.'").

[143] *See In re LimitNone, LLC*, 551 F.3d at 575; *Infotronics Corp.*, 45 F.R.D. at 94.

[144] *See Infotronics Corp.*, 45 F.R.D. at 94; *see also CXT Sys., Inc. v. Container Store, Inc.*, No. 2:18-CV-00173-RWS-RSP, 2019 WL 1506015, at *1 (E.D. Tex. Apr. 5, 2019) (outlining the requirements for transferring venue under § 1404(a), including consideration of private and public interest factors).

October 18, 2019

Respectfully submitted,

**Griffith Barbee PLLC**

/s/ *Casey Griffith*

Casey Griffith
Texas Bar No. 24036687
Casey.Griffith@griffithbarbee.com

Michael Barbee
Texas Bar No. 24082656
Michael.Barbee@griffithbarbee.com

Maeghan Whitehead
Texas Bar No. 24075270
Maeghan.Whitehead@griffithbarbee.com

One Arts Plaza
1722 Routh St., Ste. 710
Dallas, Texas 75201
(214) 446-6020 | main
(214) 446-6021 | fax

*-and-*

Derek Gilliland
Texas Bar No. 24007239
**Nix Patterson, LLP**
222 N. Fredonia
Longview, Texas 75606
(903) 215-8310
dgilliland@nixlaw.com

*-and-*

Joseph J. Mastrogiovanni, Jr.
**Mastrogiovanni Mersky & Flynn, PC**
2001 Bryan St., Ste. 1250
Dallas, Texas 75201
(214) 922-8800 | main
(214) 922-8801 | fax
jmastro@mastromersky.com

**Counsel for Plaintiff Andra Group, LP**

## CERTIFICATE OF SERVICE

The undersigned certifies this document was filed electronically in compliance with Local Rule CV-5(a). As such, it was served on all counsel of record on October 18, 2019.

/s/ *Casey Griffith*
_____
Casey Griffith